UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GREGORY ALBERT DARST,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.
_____/

Case No. 8:21-cv-1292-WFJ-JSS

Crim. Case No. 8:13-cr-181-MSS-TBM

## **O R D E R**

Mr. Darst ("Petitioner") petitions for a writ of coram nobis and moves to compel the United States to disclose documents in discovery. Dkts. 20 and 21. The United States responds to the amended petition and opposes the amended motion to compel. Dkt. 24. Petitioner replies to the response to the amended petition. Dkt. 25. After reviewing all documents submitted by the parties, the Court **DENIES** the amended coram nobis petition and the amended motion to compel.

### PROCEDURAL HISTORY

In 2013, a jury found Petitioner guilty of one count of corrupt interference with Internal Revenue Laws in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7212(a), and four counts of failure to file a tax return in violation of 26 U.S.C. § 7203. Crim. Dkt. 93. Judge Mary Scriven sentenced Petitioner to twelve months and a day in prison for the corrupt interference conviction and a concurrent six months for the failure to file a tax return convictions, followed by twelve months of supervised release. Crim. Dkt. 111 at 2.

Petitioner neither appealed his convictions nor moved to vacate, set aside, or correct his sentences under 28 U.S.C. § 2255.[1]

Eight years later, Mr. Darst petitions for a writ of coram nobis. Dkt. 20. In his amended petition, he contends that he recently discovered that the Internal Revenue Service falsified records which caused him to suffer criminal prosecution. Dkt. 20 at 1. He contends that he discovered that the IRS records show that he filed Form 1040A tax returns on his behalf for years 2006, 2007, 2008, and 2009. Dkt. 20 at 4–5. Under the penalty of perjury, he swears that he never filed a Form 1040A tax return. Dkt. 20 at 1. He admits that he discovered these "falsified" records on December 29, 2016, and that he learned about the legal remedy of coram nobis in October 2019. Dkt. 20 at 5. He further contends that commissioners for the IRS announced that filing a tax return is voluntary. Dkt. 20 at 2 n.3, 4, 9–10. He demands dismissal and expungement of his criminal convictions. Dkt. 20 at 11.

## STANDARD OF REVIEW

"The writ of error coram nobis is an extraordinary remedy of last resort available only in compelling circumstances where necessary to achieve justice." *United States v. Mills*, 221 F.3d 1201, 1203 (11th Cir. 2000). "[C]ourts may consider coram nobis petitions only where no other remedy is available and the petitioner presents sound reasons for failing to seek relief earlier." *Mills*, 221 F.3d at 1204. "Such compelling circumstances exist only when the error involves a matter of fact of the most fundamental

---

[1] Because Petitioner did not appeal, the record lacks a transcript of Mr. Darst's trial.

2

character which has not been put in issue or passed upon and which renders the proceeding itself irregular and invalid." *Moody v. United States*, 874 F.2d 1575, 1576–77 (11th Cir. 1989) (citing *United States v. Mayer*, 235 U.S. 55, 69 (1914)). "Such errors do not include 'prejudicial misconduct in the course of the trial, the misbehavior or partiality of jurors, and newly discovered evidence.'" *Mills*, 221 F.3d at 1204 (quoting *Mayer*, 235 U.S. at 69)). "Because of the availability of habeas review, the Supreme Court has found it 'difficult to conceive of a situation in a federal criminal case today where [coram nobis relief] would be necessary or appropriate.'" *Lowery v. United States*, 956 F.2d 227, 229 (11th Cir. 1992) (quoting *United States v. Smith*, 331 U.S. 469, 476 n.4 (1947)).

## ANALYSIS

### Timeliness

A court may consider a coram nobis petition "only where . . . the petitioner presents sound reasons for failing to seek relief earlier." *Mills*, 221 F.3d at 1204. "This issue requires inquiry into 'the circumstances surrounding the petitioner's failure to raise the issue earlier,' and is similar to the inquiry about whether a federal prisoner who moves to vacate his sentence could have discovered earlier, through the exercise of due diligence, the facts supporting his motion." *Gonzalez v. United States*, 981 F.3d 845, 850 (11th Cir. 2020) (citations omitted).

Petitioner explains that he discovered the remedy of coram nobis in October 2019. Dkt. 20 at 5. He further explains that, in February 2020, before he filed his coram nobis petition, a company which purchased land from him sued him in a quiet title action. Dkt. 20 at 5–6. He contends that the quiet title action arose from the IRS's interference in the

3

sale of the property. Dkt. 20 at 5–6. He asserts that he could not have raised his coram nobis claims earlier because he devoted his time to the quiet title action and was unable to investigate "the extremely complex IRS scheme to defraud [him]." Dkt. 20 at 6, 10.[2]

Petitioner fails to present a valid reason for his delay in raising his claims. The jury found him guilty in 2013, and Petitioner contends that the IRS falsified records on January 21, 2014, and February 10, 2014. Crim. Dkt. 93; Dkt. 20 at 5. He further admits that he discovered the falsified documents on December 29, 2016. Dkt. 20 at 5. Yet he waited until May 5, 2021 to file his coram nobis petition. Dkt. 1. Neither his lack of knowledge of coram nobis relief nor his preoccupation with his quiet title litigation provides sound reasons for his failure to diligently pursue his claims. Consequently, Petitioner's unreasonable four-and-a-half-year delay bars relief. *Gonzalez*, 981 F.3d at 853 ("'[P]rocedural ignorance' is not 'an excuse for prolonged inattention' when the law calls for diligence.") (quoting *Johnson v. United States*, 544 U.S. 295, 311 (2005)) (affirming the denial of a coram nobis petition filed after twenty-month delay without good reason); *Mendoza v. United States*, 690 F.3d 157, 159–60 (3d Cir. 2012) (same as to a four-year delay); *United States v. Delhorno*, 915 F.3d 449, 455 (7th Cir. 2019) (same as to five-year delay).

---

[2] The United States was a cross-claim defendant in the quiet title action and removed the action to federal court. Notice of Removal, *West Coast Grp. Enters., LLC v. Darst*, No. 8:21-cv-832-KKM-JSS (M.D. Fla.), Dkt. 1. Judge Kathryn Mizelle dismissed the federal action for lack of jurisdiction and remanded the action to state court. Order, *id.*, Dkt. 30.

**Merits**

Even if Petitioner timely raised the claims, the claims are meritless. He contends that the IRS falsified the records "to justify instituting the criminal case against [him]," Dkt. 20 at 5, that the prosecutor failed to disclose the falsified records, which he describes as "newly discovered evidence," to the grand jury and to him before trial, Dkt. 20 at 6–7, and that he had no duty to file a tax return because of the comments by the commissioners and the IRS's "scheme to defraud." Dkt. 20 at 9–10. He asserts that falsified records "resulted in criminal convictions against [him]," Dkt. 20 at 1, and contends that "[he] was convicted by fraud." Dkt. 20 at 11.

To the extent that Petitioner asserts that the IRS records demonstrate his innocence, "[a] claim of newly discovered evidence relevant only to the guilt or innocence of the petitioner is not cognizable in a coram nobis proceeding." *Moody*, 874 F.2d at 1577.

To the extent that Petitioner asserts that the prosecutor committed fraud by failing to disclose to the grand jury the "fraudulent" IRS documents and that the prosecutor violated *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing the "fraudulent" IRS documents before trial, the record refutes the claim. *Brady* requires Mr. Darst to demonstrate: "(1) the government possessed evidence favorable to him; (2) he did not possess the evidence and could not obtain the evidence with any reasonable diligence; (3) the prosecution suppressed the favorable evidence; and (4) had the evidence been disclosed to him, there is a reasonable probability that the outcome would have been different." *United States v. Melgen*, 967 F.3d 1250, 1264 (11th Cir. 2020).

5

The jury found Petitioner guilty in 2013, and Petitioner contends that the IRS falsified records on January 21, 2014, and February 10, 2014. Crim. Dkt. 93; Dkt. 20 at 5. The prosecutor could not have suppressed the IRS documents before trial because IRS generated the documents after trial. Also, his "[c]onviction beyond a reasonable doubt without the use of the tainted testimony or alleged misconduct at trial makes it highly improbable that the grand jury indictment was based on insufficient probable cause." *United States v. Garate-Vergara*, 942 F.2d 1543, 1550 (11th Cir. 1991). *Accord Gerstein v. Pugh*, 420 U.S. 103, 119 (1975) ("[I]llegal arrest or detention does not void a subsequent conviction.").

Petitioner further fails to demonstrate either that IRS records were favorable to him or that, had the IRS records been disclosed to him, there is a reasonable probability that the outcome would have been different. *Melgen*, 967 F.3d at 1264. The prosecution charged him with corruptly interfering with Internal Revenue Laws in violation of 18 U.S.C. § 2 and 26 U.S.C. § 7212(a), and failing to file a tax return in violation of 26 U.S.C. § 7203. Crim. Dkt. 1. The jury found that he failed to file a tax return in 2006, 2007, 2008, and 2009 and further found that he corruptly interfered with Internal Revenue Laws by submitting nine separate documents to the IRS. Crim. Dkt. 93 at 2–4. Those documents included fraudulent money orders purportedly worth hundreds of thousands of dollars, a letter encouraging an individual to not comply with a valid IRS notice of levy, and letters threatening an IRS agent and an IRS officer with civil and criminal penalties for purported misconduct. Crim. Dkt. 93 at 2–3.

At the time of Petitioner's trial, corruptly interfering with Internal Revenue Laws required proof "that the defendant (1) 'knowingly tried to obstruct or impede the due administration of the internal revenue laws,' and (2) 'did so corruptly.'" *United States v. Graham*, 981 F.3d 1254, 1258 (11th Cir. 2020).[3] Failing to file a tax return required proof that Mr. Darst failed to pay taxes when due and willfully failed to do so. *United States v. Williams*, 875 F.2d 846, 850 (11th Cir. 1989).

If the Court accepts the allegations in Petitioner's coram nobis petition as true, the IRS documents do not prove either that he timely filed a tax return in 2006, 2007, 2008, and 2009 or that he did not submit to the IRS the nine fraudulent documents on which his corrupt interference conviction was based. At most, the IRS documents prove that the IRS administratively prepared a substitute return on Mr. Darst's behalf after his criminal trial to calculate the amount of money that he owed the IRS.

Petitioner asserts that 26 U.S.C. § 6020(b) does not authorize an IRS examiner to file a substitute return for personal income tax and cites Internal Revenue Manual § 5.1.11.6.7. Dkts. 20 at 4 n.6 and 25 at 2–3. The plain text of the statute does not contain that limitation, § 6020(b): "If any person fails to make any return required by any internal revenue law or regulation made thereunder at the time prescribed therefor. . ., the Secretary shall make such return from his own knowledge and from such information as he can obtain through testimony or otherwise." Also, § 4.12.1.8.4 states that an IRS

---

[3] After Mr. Darst's conviction became final, *Marinello v. United States*, 138 S. Ct. 1101, 1109 (2018) held that Section 7202(a) requires that the prosecution also prove that "there is a 'nexus' between the defendant's conduct and a particular administrative proceeding, such as an investigation, an audit, or other targeted administrative action."

examiner may file a "substitute for return" for a taxpayer who fails to file a return for personal income tax. § 4.12.1.8.2.1 confirms that § 6020(b) refers to a "substitute for return."[4]

Congress enacted statutes which require an individual to file a tax return if the individual's gross income exceeds a particular amount, 26 U.S.C. § 6012(a), and which punish an individual for willfully failing to file a tax return. 26 U.S.C. § 7203. Mr. Darst admits that he did not file a Form 1040A for those years, Dkt. 20 at 1–2, and the new IRS documents do not tend to prove that he did. Furthermore, the new IRS documents do not tend to prove that Mr. Darst could have lawfully submitted to the IRS fraudulent money orders or deceptive and threatening letters to corruptly impede the collection of taxes. If Petitioner disagreed with IRS's claim to those taxes, he could have lawfully disputed the claim in administrative proceedings and in court.

A commissioner's comments about tax laws enacted by Congress do abrogate those laws. Even so, Petitioner quotes statements by commissioners from 1953 and 1990. Dkt. 20 at 2 n.3. If he contends that these statements caused him to misunderstand tax law and "because of [this] misunderstanding of the law, he had a good-faith belief that he was not violating any of the provisions of the tax laws," Mr. Darst should have testified and

---

[4] The Court does not find § 5.1.11.6.7 in the manual. Mr. Darst appears to quote from § 5.1.11.7.7(5)(b) which authorizes an IRS employee under § 6020(b) in a civil enforcement action "to prepare and process employment, excise tax and partnership returns." Dkt. 20 at n.6. § 5.1.11.7.7 does not prohibit the IRS from filing a "substitute for return" for a taxpayer who does not file a tax return.

8

presented his good-faith belief to the jury at trial. *Cheek v. United States*, 498 U.S. 192, 202 (1991).

In his reply, Petitioner contends that the prosecutors secured his conviction with fraudulent records and asserts that the fraud vitiates the judgment of conviction. Dkt. 25 at 3–7. However, he admits that the IRS generated the records after his trial, Dkt. 20 at 4–5, the IRS lawfully generated those documents under § 6020(b), and he fails to demonstrate that those documents exculpated him of his convictions. Fed. R. Evid. 401.

**Motion to Compel**

Petitioner moves to compel the United States to disclose documents that do not support his claim. In a coram nobis proceeding, a party must show good cause for a request for discovery, and a district court has discretion to limit the scope and manner of discovery. *United States v. Balistrieri*, 606 F.2d 216, 221–22 (7th Cir. 1979); *Durrani v. United States*, 294 F. Supp. 2d 204, 217 (D. Conn. 2003).

Petitioner requests Forms 1040A and substitute tax returns for years 1993 through 1998, Forms 1040A and substitute tax returns for years 2006 through 2009, and IRS transcripts for years 1993 through 1998 and 2006 through 2009. Dkt. 21 at 6–7. He states that records reflect that the IRS prepared the substitute returns for years 1993 through 1998 in 1998 and 1999, and that the IRS prepared the substitute returns for years 2006 through 2009 in 2014. Dkt. 21 at 7. He contends that the IRS issued a notice of lien based on the records from 1993 through 1998, and the indictment relied on conduct that he committed in response to the notice of lien. Dkt. 21 at 4–7. Mr. Darst firmly believes that the Forms 1040A and substitute returns do not exist and asserts that the United States'

failure to produce the forms will prove that the United States secured his conviction by fraud. Dkt. 21 at 7 n.11.

Petitioner fails to explain how proof that the IRS failed to prepare the above documents is relevant to the claims in his amended petition. As explained above, "[a] claim of newly discovered evidence relevant only to the guilt or innocence of the petitioner is not cognizable in a coram nobis proceeding." *Moody*, 874 F.2d at 1577. Even if the Forms 1040A and substitute returns do not exist, proof that the IRS failed to prepare those documents does not support Petitioner's *Brady* claim or his claim of fraud before the grand jury. If the IRS failed to prepare the documents in 2014 after his trial, the prosecution could not have disclosed evidence that the IRS failed to prepare those documents before trial. Also, the prosecution charged Petitioner with failing to file a tax return and corruptly interfering with Internal Revenue Laws. Crim. Dkt. 1. The jury found that Petitioner failed to file a tax return in 2006, 2007, 2008, and 2009 and further found that he corruptly interfered with Internal Revenue Laws by submitting to the IRS fraudulent money orders and deceptive and threatening letters to corruptly impede the collection of taxes. Crim. Dkt. 93 at 2–4. Even if evidence proved that the IRS failed to prepare a "substitute for return," Petitioner fails to demonstrate that "had [that] evidence been disclosed to him, there is a reasonable probability that the outcome would have been different." *Melgen*, 967 F.3d at 1264.

Accordingly, it is **ORDERED** that:

1. The amended petition for a writ of coram nobis (Dkt. 20) is **DENIED**.

2. The amended motion to compel production of documents (Dkt. 21) is **DENIED**.

3. The Clerk is directed to enter judgment accordingly and to close the case.

4. Because Petitioner neither makes a substantial showing of the denial of a constitutional right nor demonstrates that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal *in forma pauperis* are **DENIED**. 28 U.S.C. § 2253(c)(2). *Slack v. McDaniel*, 529 U.S. 473, 478 (2000).

**DONE AND ORDERED** at Tampa, Florida, on June 13, 2022.

_____
WILLIAM F. JUNG
UNITED STATES DISTRICT JUDGE